SAMUEL, Judge.
Plaintiff filed this suit against Avondale Shipyards, Inc., seeking workmen’s compensation benefits for total and permanent disability which he asserts he incurred as a result of an accident on May 8, 1973 while employed by defendant at its shipyard in Jefferson Parish, Louisiana. Defendant answered, denying any further liability to plaintiff for workmen’s compensation benefits.[1]
After a trial on the merits, there was judgment in favor of the defendant, dismissing plaintiff’s claim. Plaintiff has appealed.
The record reveals that on May 8, 1973 plaintiff was employed by defendant as a general laborer at its shipyard. He was working as a switchman at the time of the accident in suit. His duties involved coupling and uncoupling railroad cars, directing the operator of the locomotive, and throwing switches. As he was removing a chock from the wheel of a flatcar, a large piece of equipment fell from the car. Plaintiff claims his head and back were struck by the falling object and he was either knocked unconscious or was comatose from fright. In any event, he testified he heard a loud noise, the genesis of which he was unaware, and found himself lying on the ground a few minutes later. In addition to some injury to the back, he also sustained superficial injuries to his face and a minor injury to his right knee.
Immediately after the accident, he was brought to the first aid station maintained by defendant on its premises and then transported to West Jefferson General Hospital, where he remained for eleven days under the treatment of Dr. Howard A. Nelson, Jr., a general surgeon. Thereafter, he was seen at the Avondale first aid station by Dr. Francis Gidman, also a general surgeon, who examined him three times. Plaintiff was treated by Dr. Thomas S. Whitecloud, III, an orthopedist, from August 1, 1973 to October, 1974, during which interval he was hospitalized at Touro Infirmary at New Orleans. He was examined on four occasions by Dr. Walter Brent and on-three occasions by Dr. Arthur Kleinsch-midt, both orthopedic surgeons. He was seen on one occasion by Dr. Carl F. Culicc-hia, a neurosurgeon, on one occasion by Dr. Jay W. Seastrunk, a psychiatrist, and on one occasion by Dr. Robert A. McFarlain, a psychologist, who administered a Minnesota Multiphasic Personalty Inventory in order to determine the likelihood of successfully tolerating surgery.
Trial of the matter took place on three separate days over the course of a year. The record is quite large and the medical testimony is extensive. The issue presented arises from an apparent conflict between the testimony of Dr. Whitecloud and the testimony of the psychiatrist, Dr. Seas-trunk. The basic factual question for our determination is whether plaintiff has sustained compensable disabling injuries to his lower back as a result of the accident, or whether his inability to perform results from schizophrenia unconnected with the injury.
Dr. Nelson first saw plaintiff at West Jefferson General Hospital on the day of *657 the accident. He examined plaintiff on admission and found abrasions of the back. Plaintiff claimed paralysis, but he was able to move all four extremities normally and there was no muscle weakness or neurologic deficit. In addition to the absence of objective findings of injury, plaintiff complained to Dr. Nelson of pain in a different area of his body each day. Dr. Nelson testified his migratory complaints were consistent with a diagnosis of schizophrenia. In addition he stated plaintiff appeared frightened and anxious over his injury and concluded he was suffering from an anxiety reaction in the hospital. At the time of plaintiff’s discharge, Dr. Nelson felt plaintiff was able to return to work.
Dr. Brent and Dr. Kleinschmidt are both orthopedic surgeons. Each examined plaintiff on several occasions, neither reached a finding of degenerative disc disease, neither found positive objective findings, and each concluded plaintiff was able to return to work. Particularly significant is Dr. Kleinschmidt’s comparison of x-rays taken at different times, from which he reached the conclusion there was no radiologic evidence of narrowing of the intervertebral disc space, thereby minimizing the possibility of plaintiff suffering from degenerative disc disease. This testimony largely contradicts that given by Dr. Whitecloud as to this particular finding.
Dr. Gidman found no objective signs of injury and advised plaintiff to return to work. In the examination of May 24,1973, he complained of discomfort in the anterior and posterior chest. On the straight leg raising test, plaintiff complained of pain in the neck and shoulders. Dr. Gidman testified his complaint was not consistent with a 45° elevation of the leg and further explained the straight leg raising test is not designed to elicit complaints in the neck or shoulders. On the basis of the disparity between plaintiff’s subjective complaints and objective test results, Dr. Gidman was of the opinion that plaintiff was not being truthful and also concluded plaintiff attempted to voluntarily limit his normal range of motion.
Dr. Culicchia, a neurosurgeon, examined plaintiff on June 20, 1974. His opinion was based upon the physical examination, a comparison of x-rays taken on June 1, 1973 and April 3, 1974, and the reports from the other physicians. He was of the opinion there was no neurologic disease or injury which accounted for plaintiff’s symptoms. While Dr. Culicchia indicated there was some narrowing between the fourth and fifth cervical vertebrae, the absence of change over a period of a year indicated no progressiveness of that disorder and that it is static. He was of the definite opinion that plaintiff did not have degenerative disc disease arising from the accident for the reason that there was no relationship between plaintiff’s symptoms and the anatomic change indicated by the x-rays. This conclusion was reached because plaintiff had no objective findings, the level of degenerative disc disease necessary to induce plaintiff’s symptoms was not consistent with the distribution of his symptoms, and there was no evidence of a progressive disorder consistent with a degenerative type disease. In short, he testified plaintiff had no neurologic disorders.
Dr. McFarlain, a psychologist at Tulane Medical School, evaluated plaintiff for the sole purpose of determining the probability of his successful recovery from surgery. He testified that the Minnesota Multiphasic Personality Inventory revealed plaintiff was abnormally high on that portion of the test indicating a propensity for hypochondria as well as that portion of the test indicating a propensity for hysteria. Dr. McFarlain did not investigate plaintiff’s condition in order to determine a mental disorder, and he consequently did not give a diagnosis on such disorder. Plaintiff did complain during the interview with him, however, of two hallucinations prior to the date of the accident in suit.
Plaintiff saw Dr. Seastrunk, a psychiatrist, at the request of the defendant. Dr. Seastrunk testified the patient’s complaints arose from a pre-existing condition known as schizophrenia. He testified schizophrenia results from a biochemical brain imba *658 lance and cannot be affected by trauma. As a result, the schizophrenia was not affected or aggravated by the accident. He also testified that Triavil, a drug administered by Dr. Whitecloud, was the cause of plaintiff’s complaints of muscle problems in his hands, stiffness in the back of his neck and stiffness in his legs. He stated plaintiff’s inability to work is a direct result of his depression over his disability and was of the opinion that the accident sued upon was not a factor in plaintiff’s depression. Finally, he testified the pre-existing schizophrenic condition explains the patient’s subjective complaints and that, in the absence of objective physical findings, plaintiff should not be treated for any physical ailments.
Finally, plaintiff was seen for approximately fourteen months by Dr. Whitecloud, an orthopedist. On April 1, 1974, eleven months after the accident, he was hospitalized by this physician and placed in pelvic and cervical traction. During hospitalization, Dr. Whitecloud noted objective findings of muscle spasm in the area of the neck and lower back. Dr. Whitecloud’s opinion is that plaintiff had a degenerative disc condition which was aggravated by his accident of May 8, 1973. During the course of his treatment, Dr. Whitecloud did indicate a need for psychiatric or psychological help for plaintiff. He requested Dr. McFarlain to administer the personality test in order to determine plaintiff’s potential for a satisfactory result from surgery. All factors considered, Dr. Whitecloud concluded plaintiff would never be able to perform heavy labor again.
It is important to note Dr. Whitecloud’s original opinion was based upon x-ray examinations and the plaintiff’s stated symptoms. The doctor’s x-ray findings were contradicted substantially by the findings of Dr. Kleinschmidt with regard to the narrowing of the intervertebral disc space and the resulting evidence or lack of evidence for a conclusion of degenerative disc disease. On cross examination, Dr. Whitec-loud was questioned with regard to the effect a diagnosis of schizophrenia by a psychiatrist would have upon his diagnosis. He responded that if plaintiff were diagnosed as a schizophrenic, he could not say whether or not plaintiff had an orthopedic problem. He indicated a schizophrenic condition would require additional diagnosis, evaluation and tests before the existence or nonexistence of an orthopedic problem could be established.
The law on the point now before us is clear. The disability of the workmen’s compensation claimant is presumed to have resulted from an accident if prior thereto the injured person was in good health and subsequent thereto the symptoms of the disabling condition appear and continuously manifest themselves.[2] This rule only applies when the medical evidence shows there is a reasonable possibility of causal connection between the accident and the disabling condition.[3]
In the present case, the testimony of the psychiatrist establishes unequivocally that plaintiff’s condition is the result of his pre-existing schizophrenia and that this condition cannot be traumatically induced or aggravated. When asked what effect a psychiatrist’s diagnosis of schizophrenia would have on his diagnosis of plaintiff, the only physician who diagnosed a physical cause for plaintiff’s problems, Dr. Whitec-loud, was obliged to qualify his testimony by stating his original diagnosis would not hold firm in the face of schizophrenia without additional extensive tests to verify the existence of the physical condition by means not dependent upon the plaintiff’s recitation of his subjective symptoms. In short, the uncontradicted and unqualified testimony of the psychiatric expert shows there is no causal connection between the accident and plaintiff’s complaints. Considering the testimony as a whole, and especially in view of the fact that a plaintiff in a workmen’s compensation case, as in other civil cases, bears the burden of proof and is required to establish his claim to a legal *659 certainty by a preponderance of the evidence,[4] we agree that plaintiff’s suit must be dismissed.
For the reasons assigned, the judgment appealed from is affirmed.
AFFIRMED.

. Defendant has paid $1,511.84 for compensation disability benefits and $1,176.40 for medical benefits under the workmen’s compensation statute.

. See, for example, Bourque v. Monte Christo Drilling Corporation, La.App., 221 So.2d 604.

. Id.

. See 19 A La.Dig. &wkey; # 1421.